(December 13, 1900.)

# FIRST NATIONAL BANK OF POCATELLO v. BUNTING & CO. Bankers.

[63 Pac. 694.]

Appeal—Motion, to Dismiss — Receiver — Application to Sell Property—Jurisdiction of Judge.—Under the provisions of subdivision 1, section 4807 of the Revised Statutes, and section 9, article 5, of the constitution, an appeal may be taken from an order or judgment confirming a receiver's sale. Under the statutes of this state the judge at chambers may grant the application of a receiver to sell property. Held, under the evidence in this case that the judgment confirming the receiver's sale must be affirmed.

(Syllabus by the court.)

APPEAL from District Court, Bingham County.

Thomas F. Terrell and Hawley, Puckett & Hawley, for Appellant.

The power of judges and courts over receivers and receiverships is statutory, and without such power conferred by statute the court or judge cannot act. (Idaho Rev. Stats., secs. 4329-4334; *Sweeney v. Mahew,* 6 Idaho, 455, 56 Pac. 85.) Does section 4333 of the Revised Statutes confer the power upon the judge or the court for the sale of property in the hands of a receiver? Courts can exercise judicial functions only at such times and places as are fixed by law, and judges of courts can enter no order on vacation, except such as are expressly authorized by statutes. (*Delano v. Board of Commrs.,* 4 Idaho, 83, 35 Pac. 841, 842; 12 Am. & Eng. Encly. of Law, 14.) Such business as may be transacted out of court is exceptional and must find its warrant in some express provision of the statute. (*Delano v. Board of Commrs.,* 4 Idaho, 83, 35 Pac. 841-843; *Larco v. Casaneuava,* 30 Cal. 561; *Norwood v. Kenfield,* 34 Cal. 329; *Lomis v. Andrews,* 49 Cal. 239; *Ellis v. Carl,* 7 Neb. 381.) We also call attention to other authorities defining and construing the powers of judges at chambers. (*Washington & I. R. v. Coeur D'Alene etc. Ry.,* 3 Idaho, 263, 28 Pac. 394; *Gaffney v. Piper,* 5 Idaho, 490, 51 Pac. 406; *Van Duzer v. Towne,* 12 Colo. App. 4, 55 Pac. 13; *Johnson v. Bouton,* 56 Neb. 626, 77 N. W. 57; *Staab v. Atlantic & P. R. Co.,* 3 N. Mex. 606, 9 Pac. 381; *Colter v. Marriage,* 3 N. Mex. 604, 9 Pac. 383.) Section 9 of article 5 of the constitution states "the supreme court shall have jurisdiction to review upon appeal any decision of the district courts or the judges thereof." The statute regulating appeals, section 4807 et seq. of the Revised Statutes, was enacted while we were under the territorial system and the organic act was our fundamental law. The jurisdiction of the supreme court is now derived from the constitution alone, and the legislature can neither enlarge or restrict it. When a special case is devised the question whether the supreme court has jurisdiction in the matter must be determined by an interpretation of the provisions of the constitution and not by reference to the statute. (*Appeal of Houghton,* 42 Cal. 35; *San Francisco v. Certain Real Estate,* 42 Cal. 513; *Quint v. McMullen,* 103 Cal. 381, 37 Pac. 381; *First Nat. Bank v. Barnum,* 58 Mich. 315, 25 N. W. 202; *State Bank v. Green,* 8 Neb. 297, 1 N. W. 210; *Heegaard v. Dakota*

*Loan etc. Co.,* 3 S. Dak. 569, 54 N. W. 656; *Dell v. Elses,* 10 Or. 359; *Chandler v. Cushing Y. S. Co,* 13 Wash. 89, 42 Pac. 548.)    A decree confirming a sale, if it is final, may be appealed from.    (*Sage v. Central R. R. Co.,* 96 U. S. 712, 24 L. ed. 641; *Blossom v. Railroad Co.,* 1 Wall. 673; *Butterfield v. Usher,* 91 U. S. 246; *Wyman v. Jones,* 4 Md. Ch. 500; *Wabash etc. Co. v. Beers,* 1 Black. (U. S.) 54, 17 L. ed. 41; *Dean v. Nelson,* 10 Wall. 158, 19 L. ed. 926; *City of Memphis v. Brown,* 94 U. S. 715, 24 L. ed. 244.)

Dietrich, Chalmers & Stevens, for Respondent.

What is denominated in the record a judgment is in legal effect only an order.    If an appeal can be taken from this order, it may be taken from any order relating to the handling and disposition of the reccivership estate.    Such appeals are not in harmony with the policy of the law of receiverships, and hence were not provided for.    If the lower court exceeds its jurisdiction, as it claimed in this case, the remedy is by writ of review. (*Sweeney v. Mahew,* 6 Idaho, 455, 56 Pac. 85.)    An appeal is the creature of the statute.    (*Rupert v. Board,* 2 Idaho, 19, 2 Pac. 718; *Van Camp v. Board,* 2 Idaho, 29, 2 Pac. 721; *General Custer Min. Co. v. Van Camp,* 2 Idaho, 40, 3 Pac. 22; *Emeric v. Alvarado,* 64 Cal. 529, 2 Pac. 418 481; *Cotter. v. Cotter,* 16 Mont. 63, 40 Pac. 63; *Jones v. Quayle,* 3 Idaho,, 640, 32 Pac. 1134; *State v. Reed,* 32 Pac. 202; *Ostrander v. Weber,* 114 N. Y. 95, 21 N. E. 112; *Wyatt v. Wyatt,* 2 Idaho, 236, 10 Pac. 228; *Wakeman v. Price,* 3 N. Y. 334.)    An order of sale is one that in all instances would be granted on *ex parte* application.    The order of sale is not jurisdictional; jurisdiction attached when the court took possession of the property.    An order of sale is advisory and recommendatory.    It does not empower the receiver to consummate anything.    The confirmation of the sale is the substantive act.    (Rorer on Judicial Sales, 2d ed.)    The want of authority in a receiver to transfer a bond is no defense to the obligors, where it appears that the transfer, if not previously authorized, was subsequently confirmed by the court.    (*Manufacturing Co. v. Brady,* 105 U. S. 175, 26 L. ed. 1034; *H. B. Claflin Co. v. Gibson,* 21 Ky. Law Rep. 337, 51 S. W. 439.)

The words "judge" and "court" are frequently used as convertible terms. (Ency. of Law, 2d ed., p. 22; *Brewster v. Ludekins,* 19 Cal. 170.) A judge in vacation is not the court, but the term "court" may be interpreted to mean a judge at vacation where it is necessary to effect the intention of the legislature. (*Columbus v. Woolen Co.,* 33 Ind. 436; *Dyckman v. McDonald,* 5 How. Pr. 121; *Pressley v. Lamb,* 105 Ind. 171, 4 N. E. 682.) Assuming that the findings have a legal status, they cannot be reviewed as not being sustained by the evidence, unless the record affirmatively shows that it contains all the evidence, which is not shown by this record. (*Shaefer v. Stein,* 29 Or. 147, 45 Pac. 301; *Coffin v. Hutchinson,* 22 Or. 554, 30 Pac. 424; *Collier v. United States,* 173 U. S. 79, 19 Sup. Ct. Rep. 330; *Stahl v. Pitney,* 75 Ill. App. 649; *Fleck v. Rau,* 9 App. Div. 43, 41 N. Y. Supp. 64; *Railroad Co. v. Lorentzen,* 79 Fed. 291.)

SULLIVAN, J.—This is an appeal from an order or judgment of the district court confirming a receiver's sale of fifty-five shares of the capital stock of the First National Bank of Pocatello, Idaho. The following, among other facts, appear from the record: The respondent, C. E. Thum, is the duly appointed, qualified and acting receiver of C. Bunting & Co., Bankers, and has been such receiver for more than three years last past. That said Bunting & Co. is insolvent and unable to pay its liabilities. That fifty-five shares of the par value of $100 each, of the capital stock of the said First National Bank of Pocatello came into the hands of said receiver as a part of the assets of said Bunting & Co., Bankers. That said Bunting & Co. at the time of its failure was the owner of one hundred and fifty other shares of the capital stock of said First National Bank of Pocatello, and had, prior to said failure and to the appointment of said Thum as receiver, pledged said one hundred and fifty shares to the Omaha National Bank of Omaha, Nebraska, as security for the payment of a debt of about $35,000 owing by said Bunting & Co. to said Omaha bank. And said last-mentioned bank held said one hundred and fifty shares as such security until February 17, 1900, and all of said shares were of the par value of $100 each. On the twelfth day of February, 1900, said receiver made an application to the district

judge for an order to sell said fifty-five shares of stock either at public or private sale, provided he could obtain therefor not less than $125 per share.   The judge, upon reading and filing said application, made the following order, to wit: "It is ordered that the petitioner, C. E. Thum, as such receiver, be, and he is hereby, authorized, empowered and directed to offer said stock for sale, at public or private sale, to the highest and best bidder for cash, at such time and place and in such manner as he may deem most advantageous, and that he sell the same upon receiving therefor the sum of $125 per share or upward in cash. Such sale to be reported to the judge of said court for confirmation.  Dated February 13, 1900."  Under said order the receiver caused to be posted in three public places in Blackfoot, Bingham county, three notices of the sale of said fifty-five shares of stock at public auction at the front door of the courthouse in the town of Blackfoot, said county, on the seventeenth day of February, 1900, at the hour of 2 o'clock P. M., subject to the confirmation of said court.   At said time and place said receiver offered for sale each certificate of said stock separately, and received no bid therefor, and thereupon offered said fifty-five shares, or the whole amount thereof, in one parcel; and the highest and best bid which he received therefor was that of D. W. Standrod & Co., of $6,875, that being $125 per share. He thereupon sold the same to said Standrod & Co., subject to the confirmation of said sale by the court.  Thereupon the receiver made a report of said sale to the court, and notice was given of the time and place of hearing said return, which was at the courthouse in the town of St. Anthony, Fremont county, Idaho, on the first day of March, 1900, at 2 o'clock P. M. of said day. It was thereafter stipulated by Thomas F. Terrell, Esq., attorney for plaintiff, and the attorney for the receiver, that said hearing should be had at the courtroom in Blackfoot on the twelfth day of March, 1900, at the hour of ten o'clock A. M. On the third day of March, 1900, the appellant, the First National Bank of Pocatello, by its cashier, William A. Anthes, filed a demurrer to said report of sale made by the receiver, which is as follows: "Comes now the plaintiff, being a creditor of said defendant corporation, and, desiring to see the stock

mentioned in the order of the judge of said district court, made
and dated on the thirteenth day of February, 1900, in the above-
entitled cause, bring the best obtainable price, objects to the con-
firmation and approval of said sale of stock made on the seven-
teenth day of February, 1900, for the reason and upon the
grounds following, to wit: 1. That the judge of said district
court, at chambers, had no power to make or issue an order for
the sale of said stock, or to make the order so made on the 13th
day of February, 1900. 2. That the order of sale so made on
said day is insufficient in form and substance to authorize such
sale, or upon which title in a purchaser can be predicated. 3.
That the judge of said court, at chambers, has no power to
make or enter an order or judgment of confirmation of such
sale, and is without jurisdiction so to do, no such power being
conferred by law. 4. That no sufficient notice of the time and
place for the sale of such stock was given before the sale thereof,
nor was notice thereof given for a sufficient time before such
sale. 5. That no sufficient notice of the time and place for
the hearing of the confirmation of such sale has been given, as
will appear from the notice served, and evidence of service there-
on." On March 12, 1900, the appellant filed its written objec-
tions to the confirmation of said sale, the main points of which
are set forth in the above-quoted demurrer, and further alleged
that said receiver had promised said W. A. Anthes that he would
notify him of the time and place of the sale of said stock, and
that he failed to do so. It is also alleged that said stock is
worth more than $125 per share, and that it would sell at an
advance of from $345 to $1,000 more than the gross sum
realized at said sale. It is also alleged that in order to show the
good faith of said opposition, the appellant had obtained a bid
of $7,220 from one Silas F. King for said fifty-five shares,
which bid was accompanied with a certificate of deposit payable
to the said attorney of appellant, which certificate was to be in-
dorsed by said attorney to a custodian to be named by the court.
On the day set for the hearing of the said report of sale, Thomas
F. Terrell, Esq., appeared for the appellant, and Messrs. Diet-
rich, Chalmers & Stevens for the receiver. Said matter was
heard in open court, and C. E. Thum, receiver, W. A. Anthes,

George F. Gagon, and D. W. Standrod were sworn, examined and cross-examined as witnesses in said matter, and documentary evidence introduced, and the cause submitted to the court without argument. Thereafter, on the twenty-first day of March, 1900, the court filed its findings of fact and conclusions of law, and judgment was entered confirming said sale.

By the first finding of fact the court finds that all of the statements and averments in the receiver's report of sale and petition for confirmation are true, and that all of the material averments and allegations of plaintiff's objections and opposition are untrue, The second, third, fourth, fifth, sixth, seventh, eighth, ninth, tenth and eleventh findings of fact made by the court are as follows: 2. That on the fifteenth day of February, 1897, the defendant, C. Bunting & Co., Bankers, a corporation, being then and there insolvent and unable to meet its obligations as they matured, C. E. Thum was duly appointed receiver thereof, in the above-entitled court and cause, and thereupon, forthwith, duly qualified and entered upon the discharge of his duties as such receiver; that, among other things, there were then and there, of the assets of said C. Bunting & Co., Bankers, a corporation (hereinafter designated as the defendant bank), fifty-five (55) shares of the capital stock of the First National Bank of Pocatello, Idaho, a corporation hereinafter designated as the plaintiff bank), said shares being represented and evidenced by certificates thereof numbered 52, 54, 59, 60, 61 and 62, which said shares and certificates then and there came into the custody of said C. E. Thum, as such receiver, who, as a part of the duties of his said office, then and there took the possession, custody, and control thereof, and thereafter retained the same at all times; that on the said fifteenth day of February, 1897, at Blackfoot, Idaho, said defendant bank was also the owner of one hundred and fifty other shares of the capital stock of said plaintiff bank, which said last-mentioned shares were then pledged to the Omaha National Bank, at Omaha, Nebraska, as collateral security for the payment of debt of some $35,080, owing by said defendant bank to said Omaha National Bank, and was held by said pledgee as such security until the month of February, 1900, all of which shares were and are of the par

value of $100. 3. That at all times subsequent to the said fifteenth day of February, 1897, until the sale hereinafter found, said Thum, as such receiver, made diligent effort to find a purchaser or purchasers and to obtain an offer or offers for the above-described fifty-five shares and one hundred and fifty shares of stock, but notwithstanding such diligent search, effort, and inquiry, said receiver was never at any time during said three years' time able to obtain a bid or offer of any kind for said stock, and did not in fact receive any bid or offer whatever for said shares of stock until about the tenth day of February, 1900, when by his personal effort and negotiations he had caused the said one hundred and fifty shares of stock to be offered for sale at pledgee's sale by the holder thereof at not less than $125 per share; that by reason and on account of said negotiations on the part of said receiver, and not otherwise, he, the said receiver, obtained an offer for said fifty-five shares of stock, of $125 per share, provided and on condition only that the same should be offered for sale and sold at the same time and place with the one hundred and fifty shares pledged and offered for sale at pledgee's sale as aforesaid, so that said two hundred and five shares might be procured as one single investment, which said offer was made by D. W. Standrod & Co., Bankers, of Blackfoot, Idaho, and no other offer whatever was up to that time made by or received from any other person or corporation for said fifty-five shares of stock; that, had it not been for the personal efforts and negotiations aforesaid on the part of said receiver in pooling said stock, he would have received no bid or offer whatever for said fifty-five shares of stock, for the reason that three years' experience showed that no person desired to invest in so small a block of said stock. 4. That on the twelfth day of February, 1900, at Blackfoot, Idaho, the said one hundred and fifty shares were advertised for sale at pledgee's sale to be had at Blackfoot, Idaho, aforesaid, on the seventeenth day of February, 1900, at 2 o'clock P. M. of that day, and said receiver, having received the offer mentioned in finding 3 above, forthwith applied to the judge of said court for authority to offer said fifty-five shares for sale at the same time and place with said pledged stock, and to sell the same

at not less than $125 per share; that on the thirteenth day of February, 1900, by the judge of said court said petition was granted and allowed, and an order duly made and entered herein, upon said petition, authorizing, empowering, and directing said receiver to offer said fifty-five shares of stock for sale, at public or private sale, to the highest bidder for cash, at such time and place and in such manner as he might deem most advantageous, and to sell the same upon receiving therefor the sum of $125 per share, or upward, in cash, such sale to be reported to the judge of said court for final action; that immediately upon the receipt of such order, on February 13, 1900, said receiver advertised said fifty-five shares of stock for sale on the seventeenth day of February, 1900, at 2 o'clock P. M. of that day, at the front door of the courthouse in Blackfoot, Idaho, by posting notices thereof in three of the most public places in and about Blackfoot aforesaid.   5. That pursuant to said order and notices, and at the time and place therein specified, viz., the seventeenth day of February, 1900, at 2 o'clock P. M. of that day, at the front door of the courthouse in Blackfoot, Bingham county, Idaho, said receiver offered for sale to the highest and best bidder for cash the said fifty-five shares of stock, at public auction; that a number of persons were there present, and several bids were then and there made for said shares of stock, the highest and best bid made or received being the sum of $6,875 by D. W. Standrod & Co., Bankers.   6. That pursuant to said order of sale, and on the twenty-third day of February, 1900, said receiver duly reported said sale to the judge of said court, alleging that the sum bid as aforesaid was a fair and adequate price for said stock, and commensurate with the value thereof, and recommending that said bid be accepted, such sale confirmed, and said stock transferred in due form to the purchaser; that the plaintiff, by its counsel, then and there made and presented its objections and opposition in writing to the confirmation of said sale and the approval of said report thereof, whereupon such proceedings were had that a hearing upon the issues so raised was set for Monday, the twelfth day of March, 1900, the same being a day of the regular spring term of said court, at Blackfoot, Bingham county, Idaho,

and the same was then and there heard by and before the court as aforesaid. 7. That at said sale each of said certificates was first offered separately, and, no bid being received therefor, all said certificates were offered in one parcel, and the aforesaid bid received therefor; that the same was and is a fair and adequate price for said stock, and said sum of $6,875 was and is commensurate with the value of said stock, and that said stock could not be sold for a higher or better sum or price than that received at said sale; that said sale was regularly made and fairly conducted; that sufficient notice of the time and place of said sale was theretofore given for a sufficient time before said sale; that ample notice of the time and place for the hearing of said report of sale, for confirmation thereof, was duly given to all parties interested, and a full and complete hearing was in fact had upon all the issues involved, all interested parties being present and participating therein. 8. That said receiver did not at any time promise or undertake to specially notify plaintiff or its cashier, Mr. William A. Anthes, or any other person, of any proposed sale of said stock, but only to notify the public generally, and in accordance with the order of the court or the judge thereof, and that it was and is not competent for plaintiff to become a purchaser of said stock; that said receiver gave to plaintiff and said Anthes the same notice of said sale which was given to any other person and the general public, and the allegation that he gave only such notice as would not secure bids or bidders against D. W. Standrod & Co., and failed in that respect to perform his duties as such receiver or to fairly make and conduct said sale, is not true; that the allegation that said stock then was and now is worth more than $125 per share is not true. 9. That in connection with such opposition the plaintiff caused a bid of $7,220, being an advance of $345 over the highest bid at said sale, to be made and tendered in the name of Silas F. King, and said bid was accompanied with a sufficient tender of $7,220 in open court, and to the court or any one it might name, to be held as an offer or bid for said fifty-five shares of stock in the event of a resale thereof, but said bid or offer was not made in good faith, but on behalf of one J. A. Murray, for the purpose of gaining some

advantage, the exact nature of which does not appear; that, so far as appears from the evidence herein, the said Silas F. King is a fictitious person or name,  10. That at said hearing in open court the said D. W. Standrod & Co., Bankers, made the following offer, viz.: That if plaintiff or said bidder would keep good the said bid of $7,220, and pay the same to said receiver, for said fifty-five shares, and also repay to them, said D. W. Standrod & Co., Bankers, the amount which they had paid for said one hundred and fifty shares at pledgee's sale as aforesaid, with interest thereon at seven per cent per annum from the seventeenth day of February, 1900, they would then and there relinquish their claim to said fifty-five shares, and would transfer and turn over to the person making such payment the said one hundred and fifty shares. But said offer was then and there refused and rejected.  11. That at the time of said sale, there was due upon said pledge of one hundred and fifty shares, from the defendant herein, about $22,885, evidenced by two certain promissory notes of said defendant; that said one hundred and fifty shares were sold and purchased at such pledgee's sale by D. W. Standrod & Co., Bankers, for the sum of $18,750, and thereupon, by reason of the negotiations aforesaid on the part of said C. E. Thum, receiver, the said notes were fully satisfied, discharged and surrendered to said receiver, and said transaction resulted in a saving of upward of $4,000 to the estate of the insolvent bank; that said offer and bid of D. W. Standrod & Co. was conditioned upon the right and opportunity to purchase the whole of said two hundred and five shares of stock, and, were said fifty-five shares of stock sold to said King or Murray, the court finds that it was and is wholly impracticable that said one hundred and fifty shares of stock would have sold or would now sell for any amount to exceed $110 per share; that it is for the best interest of all parties concerned that the said bid of D. W. Standrod & Co., Bankers, of $6,875, be accepted, and the sale thereon to them confirmed by the court, and the said stock transferred accordingly."

Conclusions of law were drawn from said findings of fact, and judgment was entered against said appellant and in favor of the receiver, confirming the sale.  The appeal is from said

judgment. Counsel for respondent moved to dismiss this appeal on the ground that no appeal lies from an order or judgment of a court confirming a sale made by a receiver; that what. is denominated in the transcript as a judgment is in legal effect only an order, and appeals from orders are not in harmony with the policy of the law of receivership; and that if a lower court exceeded its jurisdiction the remedy is by writ of review. The judgment or order appealed from made a final disposition of more than $6,000 worth of the assets of the insolvent bank of Bunting & Co., and, we think, comes clearly within the provisions of section 9 of article 5 of the constitution of this state, which provides that "the supreme court shall have jurisdiction to review upon appeal any decision of the district courts or the judges thereof." The decision complained of, we think, is such an effectual and final disposition of a large amount of the assets of said insolvent estate, as to come clearly within the provisions of said section of the constitution, and that an appeal is the proper proceeding whereby to review said judgment of confirmation. Subdivision 1 of section 4807 of the Revised Statutes, among other things, provides that an appeal may be taken to the supreme court from a final judgment in a special proceeding. The statute in regard to the appointment of receivers and the care of insolvent estates is placed under the chapter concerning provisional remedies, and an order or judgment made in regard to an insolvent estate which concludes the rights of the parties is appealable, under the provisions of said section 4807 of the Revised Statutes. (See High on Receivers, sec. 198.)

Ten errors are specified and relied upon for a reversal of this case. The first three go to the jurisdiction of the judge in making the order for the sale of said stock at chambers, overruling appellant's demurrer to the report of the receiver, and in making findings of fact, conclusions of law, and entering judgment therein. The record shows that the order for the sale of said fifty-five shares of stock was made by the judge at chambers, and counsel for appellant contends that the judge has no such power conferred on him by the statute. Upon a most careful examination of our statutes in regard to receivers,

we are of the opinion that a judge at chambers has the power to order the sale of property in the hands of its receiver, with instructions to the receiver to report the sale to the court for confirmation. The record shows that the receiver reported the sale to the court, with his doings in said matter, and the court, after hearing much evidence, confirmed said sale. If it was error for the judge at chambers to order said sale, which we think it was not, the judgment of the court confirming the same cured said matter, as the ordering of a sale is only preliminary and incidental to the confirmation of such sale.

The other errors assigned refer to the admission and rejection of certain evidence, the sufficiency of the evidence to justify the confirmation of said sale, and the jurisdiction to render the judgment appealed from. We have carefully examined the action of the court in its rulings on the admission and rejection of certain evidence, and find no prejudicial error therein, and also find that the evidence is sufficient to justify the judgment confirming the sale of said shares of stock. The evidence shows that the receiver acted in the utmost good faith in the sale of said stock, and for the best interest of the insolvent estate of C. Bunting & Co. and its creditors. It also shows that the Omaha National Bank held one hundred and fifty shares of the capital stock of said First National Bank of Pocatello, which had been pledged to it, prior to the failure of C. Bunting & Co., to secure the payment of about $35,000 owing by Bunting & Co. to said Omaha Bank; that said indebtedness had been reduced to $22,800 at the time of the sale of said fifty-five shares of stock. It further appears that one A. T. Ryan controlled sixty shares of the capital stock of said Pocatello Bank, that, with the fifty-five shares in the hands of the receiver and the one hundred and fifty shares pledged to the Omaha Bank, constituted a majority of the capital stock of said Pocatello Bank, or two hundred and sixty-five shares out of a total of five hundred shares. The receiver testified that ever since his appointment he had been trying to sell said two hundred and sixty-five shares in one block; that said two hundred and sixty-five shares would sell for a better price as a whole than if sold in separate lots, for the reasons it would give to the purchaser the control of the

bank. It is further shown that a sufficient number of shares to control a corporation would, as a rule, be of greater value than a minority of such stock. The receiver testified: That immediately preceding his application to sell said fifty-five shares of stock the Omaha Bank had assigned said one hundred and fifty shares held by it as collateral, but said shares were still held as collateral. The Omaha Bank and Mr. Ryan had agreed to keep their stock until such time as it could be sold with the said fifty-five shares in one block. That he (the receiver) had not been able to sell the same while so grouped, for the reason that the Omaha Bank would not allow the one hundred and fifty shares held by it to be sold unless sufficient could be realized therefor to pay its full claim against the insolvent bank. That just before making application for said order to sell said fifty-five shares of stock he was offered $125 per share for the same, provided said one hundred and fifty shares would be sold at the same time for $125 per share. That he had never received any other bid at any price for said fifty-five shares. The testimony of the receiver also shows that he has made constant and diligent effort to sell said stock since his appointment as receiver. After receiving said bid he wrote to the president of the Omaha Bank, informing him of said offer, and the stock and notes for which payment the stock was held as collateral were duly assigned to Mr. Ryan, and arrangements made with said Ryan to have said stock sold. Thereupon the receiver procured the order of the judge for the sale of said fifty-five shares of stock, and advertised the same for sale at the time and place that the one hundred and fifty shares were to be sold. That said two hundred and five shares were at said time and place sold to D. W. Standrod & Co., and the promissory notes of C. Bunting & Co., which said one hundred and fifty shares were pledged to pay, were delivered up to the receiver, and are in his possession. At the time of said sale there was due on said notes about $22,800, which would leave about $4,000 due on said notes over and above what said one hundred and fifty shares of stock brought at $125 per share. That $4,000 has been canceled by a surrender of said notes to the receiver. The record shows that D. W. Standrod & Co.'s offer

of $125 per share for said fifty-five shares of stock was upon the condition that they get the one hundred and fifty shares above referred to on the same terms, and by the sale of the last-mentioned stock a debt amounting to $4,000 more than $125 per share against said estate was paid or canceled. The court had a right to and did take into consideration this whole transaction, and under the facts it would be most unjust to rescind the sale of the fifty-five shares of stock, and thus compel Standrod & Co. to retain the one hundred and fifty shares, when their dealings with the receiver show that they would not have made any bid for the fifty-five shares had it not been agreed and understood that the one hundred and fifty shares should be sold to them at the same time for the same price. The receiver by the sale of said one hundred and fifty shares realized $4,000 more than $125 per share thereof to said insolvent estate, and the appellant, by his offer of $7,220 for said fifty-five shares of stock, offers the small sum of $345 more than what was paid therefor by D. W. Standrod & Co. If the parties to this transaction could all be placed in the condition that they occupied before said sale, and it was a question with the court whether the fifty-five shares be sold for $7,220, or that the two hundred and five shares be sold as they were sold, and both propositions presented to the court for his approval and confirmation, there would be no question as to which would be for the best interests of the insolvent estate, as it would be much more benefited by the sale of the two hundred and five shares at $125 per share than by the sale of fifty-five shares for the sum of $7,220, or $345 more than it was sold for. The court finds, we think, correctly, "that said one hundred and fifty shares of stock would not have sold or would not now sell for any amount to exceed $110 per share." And thus, by making the sale of said one hundred and fifty shares in connection with the fifty-five shares, said one hundred and fifty shares brought fifteen dollars per share, or $2,250, more than said shares would have brought separately. The receiver and creditors alike were interested in getting as large a sum as possible for said two hundred and five shares of stock, and the evidence shows that a much larger sum was realized from the sale as

made than could possibly have been realized by selling the fifty-five shares separate and apart from the one hundred and fifty shares. The record shows that this is a contest between rival stockholders of the Pocatello Bank, and that the receiver has received a much larger sum for said stock than he could have possibly received had he sold said fifty-five shares separate and apart from the one hundred and fifty shares. The court finds, and we think correctly, that the bid put in in the name of Silas F. King was not made in good faith, but was made on behalf of J. A. Murray, for the purpose of gaining some advantage, and that, so far as appears from the evidence, said King is a fictitious person. While it is true the First National Bank of Pacatello is named as the plaintiff in this action, it is clear to our minds that it is only the nominal plaintiff, the real plaintiff being the person who put in the bid in the name of Silas F. King, and that this contest is for the ownership of the fifty-five shares of stock, and not for the purpose of protecting and promoting the interest of the creditors of the insolvent bank, for whom the receiver has acted fairly in this matter. Strict construction, technicalities, and hair-splitting grammatical analysis ought not to be permitted to control under the facts of this case, when they lead to injustice, but the interests of the creditors of the insolvent bank should be kept steadily in view. The wish and desire of a would-be purchaser of a small part of the assets in the hands of the receiver should not be held to be paramount to all else. We are commanded by the provisions of the fourth section of the Revised Statutes to liberally construe our statutes, and all proceedings under them, with a view to effect their objects and to promote justice. We are of the opinion that the court below by its decision and judgment in confirming said sale has effected the aim and object of our law in regard to receivers in those particulars, and has done justice to all concerned in this case. The order or judgment confirming said sale must be affirmed, and it is so ordered. Costs of this appeal are awarded to the respondent.

Huston, C. J., concurs.

QUARLES, J., Dissenting.—I am unable to concur in the opinion of my associates in this case.  The law, as I understand it, has some respect and consideration for the rights of all parties to an action.  When application is made by a receiver to sell property, or to confirm a sale that has been made, all parties interested are entitled to notice.  The rule is thus stated in 17 Encyclopedia of Pleading and Practice, page 833: "All parties interested should receive notice of the application for and of the motion to confirm a sale of property in the hands of a receiver."  (See cases cited in note to the text above quoted.)  Sales of property by receivers should be made, conducted, and confirmed according to the laws applicable to judicial sales generally.  (See 17 Am. & Eng. Ency. of Law, 2d ed., 832.)  These rules are just, protect all parties to be affected by the sale, and should be observed.  Upon what process of reasoning or upon what principle sales by receivers should be exempted from these rules, or why the sale in question, made by the receiver in this case, should be made an exception to these general rules, I am unable to understand.  The sale of fifty-five shares of stock in the First National Bank of Pocatello, held by C. Bunting & Co. at the time of the appointment of C. Thum receiver, and which then passed into the possession of said receiver, was had under an order made by the district judge, at chambers, or an *ex parte* application made by the receiver, and upon three days' notice posted in the town of Blackfoot, where the said sale was made.  The receiver in his report says that he "caused to be posted in three of the most public places in said Bingham county three notices of the sale of said property in due form, advertising said stock for sale," etc.  The order for the sale was made on the thirteenth day of February, 1900, and was filed on February 14, 1900.  While testifying as a witness, C. E. Thum, the receiver, among other things, testified: "After the order of sale for said stock had been made, I posted three notices, all in the town of Blackfoot, Idaho—one in front of the courthouse, one on the bulletin board at the postoffice, and one on the bulletin board of the county treasurer's office.  I gave no other notice whatever."  The receiver was in doubt whether the order reached him on

the 13th or 14th of February, but I think the only proper conclusion from his evidence, and from all the evidence in the case, is that the order of sale reached him on the 14th of February, and that on the same day he posted the three notices in the town of Blackfoot, fixing February 17, 1900, at 2 o'clock P. M., as the time for sale, and at that time the sale was made. It thus appears, undisputedly, from the record before us, that the sale in question was made upon three days' written notice posted in three places in the town of Blackfoot, no other notice being given. More than that the plaintiff in this action, a creditor of C. Bunting & Co., the insolvent corporation for which the receiver was appointed, was not given notice of the application of the receiver for the order to sell these fifty-five shares of stock in the plaintiff bank. Nor did said plaintiff have any notice, actual or constructive, of the proceedings to sell said stock, or of the said sale. Said plaintiff was entitled to notice of the application to sell said stock. The defendant was not notified of the application for the said order to sell, nor of the application for confirmation of the sale. Without considering the power of the judge, at chambers, to make the order directing the sale, which I am inclined to think that he has, I am of the opinion that said order was void because given without notice. And I am of the opinion that it is void for another reason— that it directed the sale to be made by either public or private sale. We have no statute that I know of which authorizes a receiver, sheriff, or other officer to sell at any judicial sale without notice, or on three days' notice, or authorizing such sale to be made privately. All judicial sales made under authority of law in this state require notice. All sales under execution, foreclosure of mortgage, foreclosure of pledge, or in partition, where a sale is required, must be upon not less than twenty days in case of sale of realty, and in case of personalty, perishable property alone excepted, must be upon not less than five nor more than ten days' notice. (See Rev. Stats., secs. 3393, 3423, 4482, 4583; Act Feb. 14, 1899, Acts 1899, pp. 241, 242.) The property sold was not perishable property, within the meaning of our statutes requiring notice of sale. On the other hand, the evidence in the record before us shows that the said shares

of stock in question were growing and increasing in value, owing to the policy of the plaintiff bank in retaining its surplus annual earnings, instead of paying same out in dividends among its stockholders.   There could be, under said circumstances, no great hurry for said sale, and at least no such indecent haste as would prevent the usual statutory notice required in this state in case of judicial sales of personal property.  A receiver's sale is a judicial sale, and should be, and is required by law to be, made upon notice as other judicial sales are made.   The plaintiff, to protect its own interests, and to realize as much as possible upon the debt owing to it by the insolvent banking corporation of C. Bunting & Co., commenced this action, and obtained the appointment of a receiver to take charge of the assets of said insolvent bank.   It was entitled, both as a creditor and as the plaintiff, an actual party to the action, to notice of every important step to be taken in the action which affected its rights or the assets of the insolvent banking corporation.

There is evidence in the record showing that the cashier of the plaintiff bank made inquiries as to when said shares of stock would be sold, and that the receiver knew that he desired to know when said shares would be sold, yet no notice is given the plaintiff or its said cashier.   It further appears that one of the officers and stockholders in said plaintiff bank, who apparently, from the evidence, is ambitious to control a majority of the stock of said banking corporation, was given notice by telephone by the receiver, and who was thereby enabled to, and did, buy in said stock through another banking concern.   It is attempted to justify said sale upon the theory that purchaser bought on the same day, in an entirely different transaction, at pledgee's sale, one hundred and fifty other shares in the First National Bank of Pocatello (the plaintiff here), pledged by C. Bunting & Co. to the Omaha National Bank, and that the estate of C. Bunting & Co. has been benefited by that transaction.   But the two transactions are entirely distinct.   The one hundred and fifty shares held by the Omaha National Bank never were in custody of the district court, and never came to the hands of the receiver.   Neither that sale nor those shares were connected with the sale complained of here.   The order of sale did not

mention said one hundred and fifty shares of pledged stock. The report of sale did not mention them. The petition for the order of sale did not mention them. The objections filed by the plaintiff to the confirmation of the sale did not mention them. The petition of the receiver for the order of sale, the order of sale, report of sale, and the plaintiff's written directions to the order of sale in fact constitute the pleadings in this proceeding, and make up the only issues to be tried by the court. But the court wandered outside these issues, and heard much irrelevant evidence, and the findings of fact are nearly all without the issues and irrelevant. The evidence that was admitted to show that the purchaser wanted the one hundred and fifty shares, with the fifty-five shares sold by the receiver, and his motives for wanting them, were irrelevant to the issues before the court in this proceeding. The only questions before the court were whether the sale had been properly ordered, and made for a fair price, and whether it should be confirmed. The evidence shows that, the order of sale having been made without notice either to the plaintiff or the defendant, and without at least five days' notice given as required by law, it should have been set aside, and a new sale, upon sufficient notice, ordered made. By voluntarily appearing and objecting to the confirmation of the sale, it may be said, the plaintiff waived notice of application for confirmation of the sale. Yet under no rule of practice nor upon any sound principle can it be urged, in my opinion, that the plaintiff by such appearance waived the giving of notice to it of the application for the order of sale in the first instance. The record shows that a resale will result in a higher price, that an advance of $345 over the price for which the purchaser bid it in is guaranteed, and that it will in all probability bring as much as $1,000 more than the amount for which it was formerly sold. Much of the irrelevant and incompetent evidence that was admitted by the lower court on the hearing of the application to confirm the sale in question shows an unseemly scramble between two of the stockholders and officers of the plaintiff corporation bank to obtain a majority of the stock therein, so as to control its business; that one of these officers and stockholders was favored

by the receiver, and was thereby enabled to purchase the fifty-five shares of stock at a less price than he would have been able to do if he had not been so favored. Officers of the court should not be permitted to engage in such conduct. Judicial proceedings should be conducted with fairness to everybody. I cannot assent to a rule or decision which sanctions the sale of the assets, or any of them, by a receiver upon a private sale, or sale made publicly after three days' notice, in an action commenced by a creditor to wind up the affiairs of an insolvent corporation, without any notice to the plaintiff creditor or to the insolvent defendant of the application for the sale, or of the sale itself. If the law requires not less than five nor more than ten days' notice of such sale, as I think it does, less than five days' notice is no notice at all. This court held in *Cummings v. Steele,* 6 Idaho, 666, 59 Pac. 15, that an order appointing a receiver, made on *ex parte* application, without notice to the defendant, who had appeared in the action, was made without jurisdiction and void. The rule of practice there stated applies with full force here. Without notice to either plaintiff or defendant, or any one interested, an order is made directing the sale of over $6,000 of the assets of the insolvent corporation, the defendant in the action. That order, in my opinion, is *coram non judice.* And under that order a sale is made upon three days' notice posted in the town of Blackfoot, without actual knowledge having been brought home to the parties to the action, either plaintiff or defendant, and that sale is confirmed against the objections of the plaintiff, who objected upon the ground that no notice was given it, in the face of a showing that the property can be sold at an advanced price if a resale is ordered. I am compelled to dissent. The rule followed here simply authorizes courts into whose possession property of insolvent corporations may come to dispose of that property without the knowledge of either party to the suit or any party interested. It violates all established rules of procedure in this jurisdiction, by denying to parties in interest the right of hearing. That hearing to which they were entitled was upon the application for the order to sell. If that notice had been given in this case, the said shares of stock would have sold for more than

they did sell for, as parties who own stock in and are officers of the Pocatello National Bank desired to buy said stock, but were prevented by lack of notice from bidding at said sale. Said order confirming the sale should be reversed, and this proceeding remanded to the district court, with instructions to set aside the said sale, and to order a resale after first giving public notice of not less than five nor more than ten days.

PETITION ON REHEARING.

(February 8, 1901.)

SULLIVAN, J.—After a careful examination of the petition for a rehearing in this matter, we find no reason why a rehearing should be granted, as the petition contains no points that were not fully considered on the hearing of this case. A rehearing is denied.

Stockslager, J., concurs.

QUARLES, J.—I gave to this case careful consideration in all of its phases upon the original hearing, and since the application for rehearing was made I have again carefully considered it, and am unable to come to any different conclusion from that announced in the dissenting opinion heretofore announced by me, for which reason I think that a rehearing should be granted herein.